**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** ) | |
| ) | **CASE NO.** 3:26-cv-02196-CMC |
| **and** ) | |
| ) | |
| **RBTM LLC, a Wyoming limited liability company,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Plaintiffs.** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **EAST COAST CERAKOTE LLC, a South Carolina limited liability company,** ) | |
| ) | |
| **and** ) | |
| | |
| **GAVIN LUZIER, an individual** | |
| | |
| **Defendants.** | |

**COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT**

This is an action for patent infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse East Coast Cerakote LLC ("ECC") and Gavin Luzier ("Luzier") (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiff Rare Breed's trademark rights; and engaging in unfair competition as follows:

## PARTIES

1.      Rare Breed is a corporation organized under the laws of the State of Texas with an address at 2710 Central Fwy, Suite 150-151, Wichita Falls, TX 76306.

2.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.      RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4.      Upon information and belief, ECC, is a limited liability company existing under the laws of the state of South Carolina and has a place of business at 124 Bridgeton Rd, Columbia, SC 29210.

5.      Upon information and belief, Luzier is an individual residing in Columbia, South Carolina.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because Defendants reside in and/or have a place of business in this District.

COMPLAINT - 2 -

9. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or Defendants have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

10. This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), 12,274,807 ("the '807 Patent), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Rare Breed's well-known FRT® trademark.

11. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

12. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

13. The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit C.

14. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit D.

15.  The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit E.

16.  The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit F.

17.  The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit G.

18.  The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit H.

19.  The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit I.

20.  ABC is the owner by assignment of all right, title, and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

21.  RBTM is the owner, and Rare Breed has the exclusive right to enforce the trademark FRT and variations thereon ("the FRT Marks"), including the right to enforce the marks against infringers. Since at least 2020, the FRT mark has been used by Rare Breed to identify a unique trigger system for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT trademark has come to be uniquely identified with

Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT trademark, Rare Breed has exclusive rights to enforce the following federally registered trademarks and pending applications:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|------|-------|----------|----------|-----------|-----------|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Rare Breed's common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

22.     Rare Breed is the exclusive licensee of the Asserted Patents and all substantial the FRT Marks, including the exclusive right to enforce the FRT Marks.

23.     Upon information and belief, Defendants have committed acts of direct, contributory and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

### The Invention

24.     By way of background, a typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The

rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

25.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

26.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

27.    The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and

COMPLAINT - 6 -

uses a cam, rotated by cycling of the action, to move the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

28.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

29.     The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

30.     The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

31.     The '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in

either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

32.     The claims of the Asserted Patents define the scope of the patented invention(s).

### The Infringing Devices

33.     On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

### I.     The Super Safety

34.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) "Super Safety" ("the Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

35.     On information and belief, Defendants are making, using, selling, and/or offering for sale the Super Safety website https://eastcoastcerakote.net/shop/shop-all-products/ ("ECC website"), in multiple variants:

> a.  A partial kit, which includes at minimum the cam and cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents—and/or;
>
> b.  A complete kit, which includes at minimum the cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); and/or
>
> c.  A complete kit preinstalled in a receiver and/or complete firearm, which includes cam and cam lever components and additional components (e.g., a

standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) preinstalled in an AR-pattern receiver.

36.     Exemplary photographs are shown below:



37.     The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

## II.     **The Disruptor**

38.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) Partisan Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

39.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) Partisan Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

40.     On information and belief, Defendants are making, using, selling, and/or offering for sale the Disruptor via the website https://eastcoastcerakote.net/product/partisan-disrupter-ar-15-frt-3-position-drop-in-forced-reset-trigger/, in multiple variants:

COMPLAINT - 9 -

a. <u>As a standalone product</u>; and/or

b. <u>Pre-installed in a receiver and/or complete firearm</u>.

41.    Exemplary photographs are shown below:



42.    The Disruptor also operates in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector between positions.

43.    When the Disruptor operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

44.    When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer

COMPLAINT - 10 -

from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

45. When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

## III.    The ARC-Fire

46. On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) "ARC-Fire," which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

47. On information and belief, Defendants are making, using, selling, and/or offering for sale the ARC-Fire via the website https://eastcoastcerakote.net/product/arc-fire-trigger-ambi-kit/, in multiple variants:

> a. As a standalone product; and/or
>
> a. In conjunction with separate trigger mechanism parts; and/or
>
> b. Pre-installed in a receiver and/or complete firearm.

48. Exemplary photographs are shown below:



49.     The website of Partisan Triggers, the manufacturer of the Partisan Disruptor, includes a page titled "FRT Legal Library" at  https://partisantriggers.com/library/. This web page links to copies of several documents, including the '223 Patent, the '003 Patent, and the '336 Patent, showing that Partisan Triggers and its principals are aware of Plaintiffs' patent rights and that they are relevant to the product it is making, using, selling, offering for sale, and/or importing. This provides notice of Plaintiffs' patent rights to reseller customers of the Partisan Disruptor, including the Defendant.

50.     Defendants expect customers to install these products into a firearm and provide guidance   for   them   to   do   so.   For   example,   on   the   ECC   website   at https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/, Defendants advise:

> You May Need Based On Your Set Up
>
> - Full Auto rated BCG.
> - Typically a mil-spec H2 buffer. Varies based on gas length and spring
> - Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

Additionally, as shown at https://eastcoastcerakote.net/product/ar15-lower-disassembly-and-assembly/, Defendants offer customers a "AR15 lower disassembly and assembly" service for $50.

51.     Upon information and belief, Luzier is a principal of ECC and had knowledge or should have had knowledge of Plaintiffs' patent rights at least by his access to and knowledge of the FRT Legal Library on Partisan Triggers' website.

52.     Upon information and belief, Luzier directed ECC to infringe the Plaintiffs' patent rights.

53. In view of the Defendants' knowledge of the Plaintiffs' patent rights as evidenced by at least the FRT Legal Library on Partisan Triggers' website, the infringement is willful.

54. For the reasons explained in more specificity below, the Infringing Devices each infringe at least one claim of Asserted Patents and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

**Infringement of the FRT Marks**

55. On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Rare Breed but that nonetheless bear or are promoted in association with the FRT Marks.

56. Defendants are falsely associating their products with Rare Breed's well-known FRT Marks.

57. Defendants are advertising their product as "FRT" as shown at: https://eastcoastcerakote.net/?s=FRT. Exemplary images are shown below:



COMPLAINT - 13 -



# Partisan Disrupter AR-15 FRT 3 Position Drop In Forced Reset Trigger

With the influx of orders allow 1-3 business days for tracking! Thank you

The Partisan Disruptor is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring no modification, gunsmithing, or fitting. Installation is fast, straightforward, and hassle-free.



# ARC-Fire Trigger – Ambi Kit

States that have bans on fire rate modifying devices or FRT's Which We Do Not Serve. This includes **Florida, California, Colorado (Broomfield and Boulder County), Connecticut, Delaware, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Rhode Island and Washington.**

58. Despite Defendants' marketing, Defendants' product is **not** one of Rare Breed's FRT products.

59. Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Rare Breed's products, or are endorsed by or associated with Rare Breed.

60. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Rare Breed has developed in the FRT Marks, and thus Defendants' conduct is willful.

## COUNT I — INFRINGEMENT OF THE '247 PATENT

61. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

62. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety and ARC-Fire.

63. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

64. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**The Super Safety**<br><br>*See also*Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12<br><br><br><br>https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/ |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange). |

COMPLAINT - 16 -

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | (Plaintiff-generated renderings of the Super Safety created based on observation of Super Safety acquired by Plaintiffs, shown here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>**Hammer Set Position** |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br>**Super Safety Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | <br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| said cam is in said first position, |  . . . the cam is in the first position. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

COMPLAINT - 24 -

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| |  |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm. |

65.     An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>https://eastcoastcerakote.net/product/arc-fire-trigger-ambi-kit/<br>**ARC-Fire** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The ARC-Fire (yellow/blue) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br>(Plaintiff-generated renderings of ARC-Fire created based on observation of ARC-Fire acquired by Plaintiffs, shown here and below) |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br>**Hammer Set Position**<br><br><br>**Hammer Released Position** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The ARC-Fire (yellow/blue) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear.  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.  **Trigger Member Set Position** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position. **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). **Disconnector Hook Engaged** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The ARC-Fire (yellow/blue) has a lever (yellow) with a cam lobe that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting ARC-Fire, shown in (yellow/blue), in fire control mechanism pocket)<br><br>**ARC-Fire Lever with Cam Lobe** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br><br> |
| said cam is in said first position, | . . . the cam is in the first position. |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | At this time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.  |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,  In the active reset position the ARC Lever is pushed into the Cam allowing the Lever to interact with the Cam. |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |

| '247 Patent Claim 15 | The ARC-Fire |
|---|---|
| at which time the user can pull said trigger member to fire the firearm | At this time the user can pull the trigger member (brown) to fire the firearm.  |

66.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and ARC-Fire.

67.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

68.     On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Super Safety and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

69.     Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

70.     By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

71.     By its actions, Defendants' infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

72.     By its actions, Defendants' infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

73.     Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

COMPLAINT - 38 -

74. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

75. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II — INFRINGEMENT OF THE '784 PATENT

76. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

77. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Super Safety and ARC-Fire.

78. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

79. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/ **Super Safety** *See also,* Super Safety Guide at 12 |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | **Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety created based on observation of Super Safety acquired by Plaintiffs, shown here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>"The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
|  | **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member. **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Unlocked Second Position** |

80.     An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. <br><br> https://eastcoastcerakote.net/product/arc-fire-trigger-ambi-kit/ <br> **ARC-Fire** <br><br> **ARC-Fire Installed** <br> (Plaintiff-generated renderings of ARC-Fire created based on observation of ARC-Fire acquired by Plaintiffs, shown here and below) |

COMPLAINT - 45 -

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The ARC-Fire (yellow/blue) operates as a locking member and has a first position in which the ARC-Fire locks the trigger member against pulling movement. <br><br> **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The ARC-Fire (yellow/blue) is moveable from the first position to a second position where it does not restrict movement of the trigger member. <br><br> **Unlocked Second Position** |

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| the locking member configured to be movably supported by a frame | The ARC-Fire (yellow/blue) is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br>(**section view of body portion for clarity**) |

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The ARC-Fire (yellow/blue) has an upward extending portion (yellow) configured to make actuating contact with a surface of the bolt carrier.<br><br> |

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.<br><br><br><br>**Unlocked Second Position** |

| the locking member having a body portion that is movably supported | The ARC-Fire (yellow/blue) has a body portion (blue) that is movably supported by the lower receiver using a detent (purple). |
|---|---|
| |  |
| | (**section view of body portion** (blue) **for clarity**) |
| |  |
| | The body portion (blue) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (purple) |

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| | <br><br>Once installed, the body portion (blue) is movably supported by the lower receiver (grey) using the detent (purple).<br>**(section view of body portion (blue), lower receiver (grey), and detent (purple) for clarity)** |

| | |
|---|---|
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The ARC-Fire has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).<br><br><br><br>Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.<br><br> |

| '784 Patent Claim 1 | The ARC-Fire |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br> |

81.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and ARC-Fire while selling products.

82.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

83.     On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Super Safety and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

84.    Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants know or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '784 Patent.

85.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

86.    By its actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

87.    By its actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

88.    Defendants' infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

89.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

90.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

91.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

92.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Super Safety.

93.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

94.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a forced reset trigger mechanism installed into a firearm receiver in place of a standard safety. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | **(Super Safety)** Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/ **Super Safety Installed** |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
|  | (Plaintiff-generated renderings of Super Safety created based on observation of Super Safety acquired by Plaintiffs, shown here and below; cam selector and bolt carrier shown in section view for clarity) |
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes.<br><br><br><br>**Dual Mode Cam Selector**<br>Super Safety Guide at 1<br><br> |
| a lever; | The Super Safety has a lever (pink) extending upward from the cam selector. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  |
| a trigger; | The cam selector operates on a trigger. (brown) |
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below. |
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  Longitudinal slot |
| the lever comprising a proximal end and a distal end; | The Super Safety lever (pink) has a proximal end and a distal end, as illustrated below.<br><br>Distal end<br><br>Proximal end |
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector (yellow) is configured to receive the proximal end of the lever (pink).<br><br>Super Safety Guide at 12 |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | <br><br>**(Super Safety Installed)** |
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam. |
| the trigger comprising a first trigger tail portion; | The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | Super Safety Guide at 10. |
| the cam selector being configured to operate between a first mode, a second mode, and a third mode; | The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Super Safety Guide at 1. |
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | **First recess** **First trigger tail portion** **Super Safety Installed, Trigger Pulled, Lever and Cam Rotated** |
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam. **Second recess** **First trigger tail portion** **(Active Reset Mode)** |
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
|  |  Super Safety Installed, Trigger Pulled |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | **Super Safety Installed, Lever and Cam Rotated**<br><br>Second recess<br><br>First trigger tail portion |
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled.<br><br>First trigger tail portion<br><br>First trigger tail portion |

95. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '538 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products.

96. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

97. On information and belief, Defendants also contribute to the infringement of the '538 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '538 Patent.

98. Defendants have engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '538 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and

the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '538 Patent.

99.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

100.    By its actions, Defendants' infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

101.    By its actions, Defendants' infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

102.    Defendants' infringement of the '538 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

103.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

104.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IV — INFRINGEMENT OF THE '159 PATENT

105.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

106.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes the '159 patent. Such unlicensed products include the Super Safety and ARC-Fire.

107.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

108.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode<br><br><br><br>**Super Safety**<br><br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
|  | https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/ **Super Safety (Installed)** (Plaintiff-generated renderings of the Super Safety created based on observation of Super Safety acquired by Plaintiffs, shown here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange). |

COMPLAINT - 69 -

| '159 Patent Claim 1 | The Super Safety |
|---|---|
|  | <br><br>**Super Safety (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br>**Hammer Set Position** |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |
| between set and | **Trigger Member Set Position** |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| released positions, | <br><br><br><br><br><br><br><br><br><br><br><br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>Hammer sear surface<br><br>Trigger member sear surface<br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | \n\n**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).\n\n\n\n**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| fire control mechanism pocket, |  **Super Safety Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position. **Cam and Lobe First Position** In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | <br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

COMPLAINT - 75 -

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode, |

COMPLAINT - 77 -

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, |  Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to force the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. |  . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |

109.    An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|

| | |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism that uses a bolt means. With the ARC-Fire installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode<br><br><br><br>**ARC-Fire**<br><br><br><br>https://eastcoastcerakote.net/product/arc-fire-trigger-ambi-kit/<br><br><br><br>**ARC-Fire (Installed)**<br><br>(Plaintiff-generated renderings of ARC-Fire created based on observation of ARC-Fire acquired by Plaintiffs, shown here and |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| | below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The ARC-Fire (yellow/blue) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br>Hammer sear surface<br><br>Trigger member sear surface<br><br>**ARC-Fire (Installed)** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. <br><br> **Hammer Set Position** <br><br> **Hammer Released Position** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and<br><br><br><br><br>released positions, | The ARC-Fire (yellow/blue) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br><br>**Trigger Member Set Position**<br><br><br>**Trigger Member Released Position** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.<br><br><br>**Trigger Member and Hammer Member Released Positions** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).  **Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The ARC-Fire (yellow/blue) has a cam with a cam lobe and lever (yellow) that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting ARC-Fire, shown in yellow/blue, in fire control mechanism pocket)  **ARC-Fire Cam with Lobe and Lever** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br>**Cam and Lobe Second Position** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br><br>In the SEMI position, the ARC Lever will not engage the Cam as its rotated rearward leaving the Cam in the unlocked position. |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br>**Disconnector Hook Catches the Hammer** |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  **Pressure on Trigger Member Prevents Reset** |

| '159 Patent Claim 1 | The ARC-Fire |
| --- | --- |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br><br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode, |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to force the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| '159 Patent Claim 1 | The ARC-Fire |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.  |

110.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and ARC-Fire while selling products.

111.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

112.    On information and belief, Defendants also contribute to the infringement of the '159 Patent by others, including their customers. Acts by Defendants that contribute to the

infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '159 Patent.

113.    Defendants have engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '159 Patent.

114.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

115.    By its actions, Defendants' infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

116.    By its actions, Defendants' infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

117.    Defendants' infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

118. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

119. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT V — INFRINGEMENT OF THE '223 PATENT

120. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

121. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Disruptor.

122. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

123. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

| '223 Patent Claim 4 | The Disruptor |
| --- | --- |
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Disruptor is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
|  |  |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |
| a housing having transversely aligned pairs of openings for | The Disruptor includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| receiving hammer and trigger assembly pins; | **Hammer and trigger pins** <br><br> **First Openings** <br> **Housing**  **Second Openings** <br><br> (Plaintiff–generated renderings of the Disruptor created based on observation of the Disruptor acquired by Plaintiffs, shown here and below) |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Disruptor includes a hammer (blue) with a sear notch and is mounted in the housing to pivot on a transverse axis. |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| between set and |  |
| released positions; | |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| | **Released Position** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis | The Disruptor has a trigger member (green) that has a sear and is mounted in a housing to pivot on a transverse axis. |
| between set | **Set Position** |
| and released positions, | **Released Position** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| | |
| the contact causing the trigger member to be forced to the set position; | The hammer (blue) pivots rearward causing the trigger (green) to be forced to the set position.<br><br> |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| a locking bar pivotally mounted in the housing | The Disruptor includes a locking bar (red) that is pivotally mounted in the housing. |
| and spring biased toward a first position<br><br>in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position<br><br>in which the trigger member can be moved by an external force to the released position. | <br>**First position mechanically blocked**<br><br>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position.<br><br>In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

124. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '223 patent.

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

125.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the '223 Patent.

126.    On information and belief, Defendants also contribute to the infringement of the '223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

127.    Defendants have engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '223 Patent.

128.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

129.     By its actions, Defendants' infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

130.     By its actions, Defendants' infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

131.     Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

132.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

133.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI — INFRINGEMENT OF THE '003 PATENT

134.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

135.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

136.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

137.     An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '003 patent is illustrated in the chart below:

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.<br><br><br><br>https://eastcoastcerakote.net/product/partisan-disrupter-ar-15-frt-3-position-drop-in-forced-reset-trigger/. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing (black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| |  The Disruptor is sold with hammer and trigger pins. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| | (Plaintiff-generated renderings of the Disruptor created based on observation of the Disruptor acquired by Plaintiffs, shown here and below) |
| between set and | **Set Position** |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | **Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin |
| between set | **Set Position** |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| and released positions, | **Released Position**<br><br>The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue)<br><br>**Hammer Surface**<br>**Trigger Surface** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be forced to the set position. |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position<br><br>**(Set position)** |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br>**Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
|  | |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin<br><br> |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| | **First position mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled<br><br>**Second position not mechanically blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| carrier reaches a substantially in-battery position, and | |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br>**Safety Selector** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook<br><br><br><br>**Standard semi-automatic position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer | When the Disruptor is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be forced to the set position. |

COMPLAINT - 113 -

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| causing said trigger member to be forced to said set position, | **Trigger pulled to the rear, hammer first touches the trigger** **Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
|  |  |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger |

138. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

139.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the '003 Patent.

140.    On information and belief, Defendants also contribute to the infringement of the '003 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

141.    Defendants have engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '003 Patent.

142.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

143. By its actions, Defendants' infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

144. By its actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

145. Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

146. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

147. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT VII — INFRINGEMENT OF THE '336 PATENT

148. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

149. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Disruptor.

150. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

151. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 patent is illustrated in the chart below:

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.  https://eastcoastcerakote.net/product/partisan-disrupter-ar-15-frt-3-position-drop-in-forced-reset-trigger/. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| |  The Infringing Devise is sold with hammer and trigger pins. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
|  |  (Plaintiff-generated renderings of the Disruptor created based on observation of the Disruptor acquired by Plaintiffs, shown here and below) |
| between set and | **Set Position** |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | **Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br>between set | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin<br><br>**Set Position** |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| and released positions, | **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be forced to the set position |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |
| | **Set Position** |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br>**Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin. |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
|  | **First position mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled.<br><br>**Second position not mechanically blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br>Safety Selector |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect (orange) moves to a position that does not allow the disconnector hook to catch the hammer (blue) hook<br><br>**Forced reset semi-automatic position** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook |

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | **Standard semi-automatic position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be forced to the set position. **Trigger pulled to the rear, hammer first touches the trigger** |

COMPLAINT - 128 -

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| | **Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook<br><br>**Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger |

COMPLAINT - 129 -

152. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '336 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

153. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 3 of the '336 Patent.

154. On information and belief, Defendants also contribute to the infringement of the '336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

155. Defendants have engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '336 Patent.

156.    By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

157.    By its actions, Defendants' infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

158.    By its actions, Defendants' infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

159.    Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

160.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

161.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VIII — INFRINGEMENT OF THE '807 PATENT

162.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

163.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

164.  On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

165.  An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the '807 patent is illustrated in the chart below:

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism. <br><br>https://eastcoastcerakote.net/product/partisan-disrupter-ar-15-frt-3-position-drop-in-forced-reset-trigger/. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| between set and | <br>(Plaintiff-generated renderings of the Disruptor created based on observation of the Disruptor acquired by Plaintiffs, shown here and below)<br><br>**Set Position** |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set | The Disruptor includes a trigger member (green) that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>**Set Position** |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| and released positions, | **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be forced to the set position |

| '807 Patent Claim 1 | The Disruptor |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| | **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br><br><br>**Released Position** |
| a disconnector having a hook for engaging said hammer hook | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook<br><br> |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |

COMPLAINT - 137 -

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| |  |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Disruptor has a locking member (red) that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position. |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| | <br>**First position mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,<br><br>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled<br><br><br>**Second position not mechanically blocked**<br><br>The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |

COMPLAINT - 139 -

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.  |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook  **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be forced to the set position. |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
| |  **Trigger pulled to the rear, hammer first touches the trigger** **Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

| '807 Patent Claim 1 | The Disruptor |
|---|---|
|  |  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger. |

166. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

COMPLAINT - 142 -

advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

167. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '807 Patent.

168. On information and belief, Defendants also contribute to the infringement of the '807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

169. Defendants have engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '807 Patent.

170. By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

171.    By its actions, Defendants' infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

172.    By its actions, Defendants' infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

173.    Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

174.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

175.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## <u>COUNT IX — INFRINGEMENT OF THE '403 PATENT</u>

176.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

177.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Super Safety and ARC-Fire.

178. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

179. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism.<br><br><br><br>**Super Safety**<br><br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12<br><br>https://eastcoastcerakote.net/product/super-safety-flat-face-trigger-kit-d2-steel-active-reset-trigger-for-ar-15-frt/ |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Super Safety (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br>**Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of Super Safety created based on observation of Super Safety acquired by Plaintiffs, shown here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Super Safety is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown)<br><br>**Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a standard semi-automatic | The Super Safety is a safety selector adapted to be movable between a standard semi-automatic position, |

COMPLAINT - 146 -

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| position and a forced reset semi-automatic position, | **Super Safety (installed) in Standard Semi-Automatic Position**<br><br>. . . and a forced reset semi-automatic position,<br><br>**Super Safety (installed) in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |

COMPLAINT - 147 -

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br><br>**Hammer Hook is Past Disconnector Hook** |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

| '403 Patent Claim 38 | The Super Safety |
| --- | --- |
| |  **Pressure Must be reduced** |

180.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the '403 patent is illustrated in the chart below:

3:26-cv-02196-CMC    Date Filed 06/04/26    Entry Number 1    Page 150 of 167

| '403 Patent Claim 38 | The Disruptor |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Disruptor is part of a forced reset trigger mechanism.<br><br><br><br>https://eastcoastcerakote.net/product/partisan-disrupter-ar-15-frt-3-position-drop-in-forced-reset-trigger/.<br><br>**Disruptor** |

COMPLAINT - 150 -

| '403 Patent Claim 38 | The Disruptor |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Disruptor has a hammer (blue) that has a hammer hook and pivots on a transverse axis.<br><br>**Disruptor (Installed)**<br><br>(Plaintiff-generated renderings of Disruptor created based on observation of the Disruptor acquired by Plaintiffs, shown here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; | The Disruptor has a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br>**Disconnector** (orange) |

| '403 Patent Claim 38 | The Disruptor |
|---|---|
| a trigger member; and | The Disruptor has a trigger member (green) which has a disconnector hook and pivots on a transverse disconnector pivot axis<br><br>**Trigger Member (green)** |
| a safety selector adapted to be movable between a standard semi-automatic position | The Disruptor has a safety selector adapted to be movable between a (**standard semi-automatic**) position,<br><br>**Disruptor** (installed) in Standard Semi-Automatic Position |

| '403 Patent Claim 38 | The Disruptor |
|---|---|
| and a forced reset semi-automatic position, | . . . and a forced reset semi-automatic position,<br><br><br><br>**Disruptor (installed) in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (green) is rearwardly actuated. |

| '403 Patent Claim 38 | The Disruptor |
|---|---|
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (blue) pivots rearward to a position where the hammer hook is past the disconnector hook (orange), |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (green) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

181.    An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The ARC-Fire |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the ARC Fire is part of a forced reset trigger mechanism.<br><br><br><br>https://eastcoastcerakote.net/product/arc-fire-trigger-ambi-kit/<br>**ARC-Fire** |

| '403 Patent Claim 38 | The ARC-Fire |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The ARC Fire (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br><br><br>(Plaintiff-generated renderings of ARC Fire created based on observation of ARC-Fire acquired by Plaintiffs, shown here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The ARC Fire is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br>The ARC Fire is installed along with a trigger member (brown) Transverse pivot axis.<br><br> |

| '403 Patent Claim 38 | The ARC-Fire |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The ARC Fire is a safety selector adapted to be movable between a (**standard semi-automatic**) position,<br><br><br><br>. . . and a forced reset semi-automatic position,<br><br>**Image with text taken from AS Designs Facebook video** |

| '403 Patent Claim 38 | The ARC-Fire |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When the safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange), |

| '403 Patent Claim 38 | The ARC-Fire |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

182. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Devices while selling products.

183. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

184. On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Devices, such as the can and lever arm or the trigger assembly. The components are not suitable for substantial noninfringing use as they are

COMPLAINT - 159 -

specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '403 Patent.

185. Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

186. By its actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

187. By its actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

188. By its actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

189. Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

190. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

191. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT X — FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

192. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

193. Rare Breed is the exclusive licensee of all substantial rights in the FRT Marks in connection with firearm triggers.

194. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff Rare Breed owns all substantial rights in and to enforce these federal trademark registrations.

195. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Rare Breed's continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Rare Breed.

196. The reputation Rare Breed has built in the FRT Marks is of great value to Rare Breed.

197. Rare Breed's use of and substantial rights in the FRT Marks predate any use by Defendants of FRT.

198. Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

199.    Defendants' use of the FRT Marks was and is without Rare Breed's consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

200.    Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed.

201.    Rare Breed is entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

202.    Upon information and belief, Defendants have realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT XI — FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(A)

203.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

204.    Plaintiff Rare Breed owns substantial rights in the distinctive FRT Marks in connection with firearm triggers through its continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendant.

205.    Rare Breed's common law rights in the FRT Marks predate Defendants' infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

206.    Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

207. Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Rare Breed. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

208. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

209. Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

210. Rare Breed is entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

211. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT XII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

212. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

213.     As described above, RBTM owns, and Rare Breed has the exclusive right to enforce the distinctive FRT Marks in connection with firearm triggers through its continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendant.

214.     Rare Breed's common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

215.     Defendants are using FRT as a source identifier in US commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

216.     Defendants' use of FRT was and is without Rare Breed's consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

217.     Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

218.     Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Rare Breed for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed's.

219.     Rare Breed is entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

220.     Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT mark, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

COMPLAINT - 164 -

a.    Each of the Asserted Patents has been and continues to be infringed by Defendant;

b.    Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d.    That Defendants willfully infringed Rare Breed's registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e.    That Defendants committed willful acts of false designation of origin through its unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f.    A preliminary injunction enjoining Defendants and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (i) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (ii) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (a) in association with firearm triggers or any related products; (b) in any other manner that creates confusion or is likely to create confusion with Rare Breed or Rare Breed's FRT Marks; (c) that in any way constitutes unfair competition with Plaintiffs; or (iii) other such equitable relief as the Court determines is warranted;

g.    A permanent injunction enjoining Defendants and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (i) infringement or contributing to the infringement of each of the Asserted Patents; (ii) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (a) in association with firearm triggers or any related products; (b) in any other manner that creates confusion or is likely to create confusion

with Rare Breed or Rare Breed's FRT Marks; (c) that in any way constitutes unfair competition with Plaintiffs; or (iii) other such equitable relief as the Court determines is warranted;

h.      Consistent with Paragraph (g), order Defendants to (a) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control; and (b) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

i.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

j.      An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

k.      An award of all profits received by Defendants from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

l.      An award of all damages sustained by Rare Breed as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

m.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

n.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable by right.

DATED: June 4, 2026

Respectfully submitted,

/s/ *Scott Cole*

Scott Cole (Fed. Id. 14574)
Dority & Manning, P.A.
Two Liberty Square
75 Beattie Place, Suite 1100
Greenville, SC 29601
Tel: 864-271-1592
Email: scole@dority-manning.com

and

Glenn D. Bellamy (pro hac vice forthcoming)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: 513-707-0243
Email: gbellamy@whe-law.com

*Attorneys for Plaintiffs*